IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SHEILA ANN FOUCH,

        Plaintiff,

v.                                 CIVIL ACTION NO.  2:12-cv-00659

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Sheila Ann Fouch's Complaint [ECF 2] seeking review of the final decision of the Commissioner of Social Security ("Commissioner").  By standing order entered September 2, 2010, and filed in this case on March 7, 2012, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation for disposition ("PF&R").  Magistrate Judge Stanley entered her PF&R on February 13, 2013, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (ECF 19.)

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, replacing the former Social Security Commissioner, Michael J. Astrue, the original Defendant in this case.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is automatically substituted as the Defendant.

Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Objections to the PF&R in this case were due on March 4, 2013. Plaintiff filed objections to the PF&R on February 27, 2013 (ECF 20). The Defendant filed his response to Plaintiff's objections on March 11, 2013 (ECF 21).

For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&R, **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** Plaintiff's Complaint [ECF 2].

## I. PROCEDURAL BACKGROUND

The facts concerning this matter are accurately and more fully set forth in the PF&R. In short, Plaintiff filed applications for disability insurance benefits ("DIB"), supplemental security income ("SSI"), and disabled widow's benefits in April 2010. She initially claimed that her disability began on September 11, 2006, and resulted from injuries sustained in a car accident. (ECF 10-7 at 4-6.). The alleged disabilities were constant pain in her right ankle, depression, and other mental problems. Plaintiff's claims were denied initially as well as upon reconsideration.

Upon Plaintiff's request, a hearing was held before Administrative Law Judge John W. Rolph ("ALJ") on October 17, 2011. At the hearing, the ALJ permitted Plaintiff to amend the date of the onset of her disability to March 1, 2010. The ALJ received medical record evidence, and Plaintiff and a vocational expert offered testimony.

By decision dated October 27, 2011, the ALJ determined that Plaintiff was not entitled to benefits. Using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, the ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since the alleged amended disability onset date March 1, 2010; (2) Plaintiff suffers from several severe impairments, namely, pain and arthritis related to the fractures of both ankles; pain and numbness in her right arm and elbow related to the fracture of her arm; obesity; and disorders related to major depression, generalized anxiety, and post-traumatic stress; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments under the governing regulations; (4) Plaintiff's impairments do not prevent the performance of past relevant work; and (5) Plaintiff has the residual functional capacity to perform light work, with the certain stated conditions, limitations, and restrictions.

Plaintiff's request for review of the ALJ's decision was denied by the Social Security Administration's Appeals Council and, thus, the ALJ's decision became the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff sought judicial review by this Court on March 7, 2012. Following briefing by the parties, Magistrate Judge Stanley filed a PF&R, recommending that this Court affirm the final decision of the Commissioner.

## II. PLAINTIFF'S OBJECTIONS TO THE PF&R

Plaintiff lodges three objections to the PF&R.

First, Plaintiff contends that the ALJ failed to apply the correct legal standards when evaluating the opinions of Plaintiff's treating physicians; thus, Plaintiff claims Magistrate Judge Stanley erred by recommending that the Court find that the ALJ correctly discounted the treating physicians' opinions. In support of this contention, Plaintiff argues that, although the ALJ recited

the medical evidence in the record, the ALJ failed to analyze these medical opinions in the manner required by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

Second, Plaintiff maintains that the ALJ erred because he did not take into account all of Plaintiff's physical limitations when making his residual functional capacity ("RFC") finding. Plaintiff asserts that the ALJ erred when he posed a hypothetical question to the vocational expert; thus, Plaintiff contends Magistrate Judge Stanley erred in recommending that the Court find that the ALJ properly assessed Plaintiff's RFC and posed a valid hypothetical question to the vocational expert. In support of this argument, Plaintiff offers several criticisms including faulting Magistrate Judge Stanley because the ALJ allegedly: (1) failed to fully consider the opinion of Kathleen M. Monderewicz, M.D., a consultative expert who opined that Plaintiff should "avoid maintaining the legs in a prolonged dependent position with sitting, standing, and driving due to swelling of the ankle joints" (ECF 10-10 at 26); (2) made improper findings regarding Plaintiff's arm, hand, and finger manipulability; and (3) failed to include in his RFC "all of Ms. Fouch's mental limitations" (ECF 20 at 9). Plaintiff further assigns error to Magistrate Judge Stanley for stating that Plaintiff's previous work as an automobile insurance agent was consistent with the handling and fingering limitations noted by Dr. Wirts when the ALJ never made such a finding.

## III. STANDARD OF RVIEW

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made. The Court is not required to review, de novo or by any other standard, the factual or

4

legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. at 150.

The Court has a narrow role in reviewing claims brought under the Social Security Act. This Court is authorized to review the Commissioner's denial of benefits, as set forth by his designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Its review is limited to determining whether the contested factual findings of the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). If substantial evidence exists, the Commissioner's final decision must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d at 1456). A review of the Secretary's decision must be made on the record as a whole. *Flack v. Cohen*, 413 F. 2d 278, 279 (4th Cir. 1969). Assuming error by the Commissioner, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached by the ALJ. *See Ngarurih v. Ashcroft,* 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency

5

acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.")

### IV. DISCUSSION

A.     *Plaintiff's First Objection*

Plaintiff first contends:

> The Magistrate Judge found that the ALJ in this case properly considered the opinions of Drs. Perez and Thornton. Ms. Fouch respectfully disagrees and objects to the Magistrate's recommendation on this issue. Specifically, Ms. Fouch contends the Magistrate has substituted the ALJ's discussion of medical evidence related to separate and unrelated issues for the analysis required of treating physicians.

(ECF 20 at 2.)

Plaintiff takes issue with the fact that the ALJ's discussion of the opinions of Plaintiff's treating physicians, Robert E. Perez, M.D., an internist, and Ted Thornton, M.D., a psychiatrist, and the ALJ's discussion of his assignment of weight afforded to those opinions appear in different sections of the ALJ's sixteen-page decision. Plaintiff maintains that the Court must cabin the ALJ's reasoning for his treating source opinion weight determinations to just two short passages (ECF 10-2 at 24-25) of his lengthy decision. Plaintiff argues that these passages fail to reflect consideration by the ALJ of the factors contained in the regulations governing an ALJ's assessment of medical opinions. *See* 20 C.F.R. §§ 404.157 and 416.927.

Plaintiff's argument is meritless for several reasons. To begin, Plaintiff misapprehends the standards that govern this Court's review. The sole issue before this Court is whether the decision to deny Plaintiff's disability claims was supported by substantial evidence and was reached by application of correct legal standards. 42 U.S.C. § 405(g); *Coffman v. Bowen*, *supra*,

829 F.2d at 517. Additionally, Plaintiff fails to understand that in making this determination, the Court must review the record as a whole, and the fact that the Court is not constrained to a single, isolated section of the record in examining the issues.[2] *Flack v. Cohen*, 413 F. 2d at 279. As discussed below, the ALJ's explanations for rejecting Dr. Perez's opinion and ascribing "little weight" to Dr. Thornton's opinion are legally sufficient, especially when considered in the context of the ALJ's entire decision.

Moreover, Plaintiff's substantive argument is simply wrong. The record reveals that the ALJ correctly evaluated Plaintiff's treating physicians' opinions. As noted by the ALJ and Magistrate Stanley, the regulations governing evaluation of medical opinions provide as follows:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give

---

[2] As noted by Defendant, Plaintiff's reliance on dicta from *S.E.C. v. Chenery Corp.*, 332 U.S. 194 (1947) is unhelpful because that case involved review of an administrative agency decision under the Public Utility Holding Act [15 U.S.C. § 79, et seq.] and not under 42 U.S.C. § 405. Also, as discussed herein, the ALJ's decision is fully supported by the record.

the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary

> requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §§ 404.1527(d) & 416.927(d); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (tracking the factors set forth in 20 C.F.R. § 404.1527(d)(1)–(6)).

These regulations state that the Social Security Administration will "always give good reasons" for its determination of the weight given to a treating source's opinion. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). The purpose of this requirement is that it allows claimants to understand the disposition of their cases and "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544–45 (6th Cir. 2004).

While these provisions set the forth the factors an ALJ considers in assigning weight to a treating source's opinion, they are silent as to the standard for the sufficiency of the ALJ's explanation for his decision. Social Security Ruling 96-2P, while lacking the force of law, offers helpful guidance on this question. SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) ("Social Security Rulings . . . do not have the force of law [but] they are entitled to deference unless they are clearly erroneous or inconsistent with the law.") (internal citation omitted). This Ruling requires an adjudicator to provide "specific reasons" for the weight assigned to a treating source's medical opinion. *Id.* The Ruling states that the reasons "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* The Ruling also provides that a "case cannot be decided in reliance on a medical opinion without some

9

reasonable support for the opinion and the opinion may not be given "controlling weight" if the adjudicator finds that the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Id*. at *2.

> The ALJ rejected Dr. Perez's opinion stating that the opinion
>
> is not supported by the radiological findings of record or the claimant's treatment records. In fact, the claimant had very limited treatment of the right ankle subsequent to her accident and recovery until right after she filed her claim for disability in April 2010. Furthermore, Dr. Perez does not provide a basis for his opinion, and his opinion is not consistent with the record as a whole.

(ECF 10-2 at 24.)

The ALJ's findings are fully supported by the record. The medical records indicate that Plaintiff was injured in a car accident in September 2006, and that she underwent surgery to her right ankle and had post-operative physical therapy. Because of the discomfort associated with surgical hardware implanted in her ankle, Plaintiff underwent an additional surgery in the fall of 2007 to remove this hardware and had two follow-up visits, the latter of which was in November 2007. These records indicate, among other things, that imaging studies showed that the ankle fracture "has healed quite nicely" and that the discomfort caused by the surgical hardware was significantly alleviated by removal of the hardware. The notes accompanying Plaintiff's last examination in November 2007 indicated that the physician scheduled Plaintiff for a follow-up visit the next month, but it appears Plaintiff did not ever return.

Based on the medical records in evidence, Plaintiff did not see another physician until after she filed her disability claims in April 2010. This was an obvious and relevant concern to the ALJ. Plaintiff faults the ALJ for making this finding because at the October 17, 2011

administrative hearing she advised the ALJ that she had sought treatment from an osteopathic family physician, Anita Dawson, in 2009 and early 2010. Plaintiff told the ALJ that she was not able to offer medical records because Dr. Dawson's office had closed.[3] In her objections, Plaintiff states more than once that the ALJ relied on the "false assertion" that Plaintiff did not receive treatment during the 2008 and 2009 timeframe. The fact remains that, despite Plaintiff's uncorroborated assertion that she received care from Dr. Dawson, Plaintiff, who bears the initial burden, presented *no medical evidence* from this doctor. Thus, the ALJ correctly found that there was a two-year gap in the medical evidence.

As Magistrate Judge Stanley found, the ALJ expressly noted his "good reasons" for not attributing controlling weight to the opinions of Drs. Perez and Thornton. The ALJ's decision contained a thorough recitation of all of the medical evidence. Notably, in his decision the ALJ explicitly states that he considered opinion evidence in accordance, *inter alia*, with 20 C.F.R. §§ 404.1527, 416.1527, and Social Security Ruling 96-2P, leaving no doubt that the ALJ was mindful of the correct legal standards in reaching his decision. (*See* ECF 10–2 at 20.) The ALJ further stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929." (*See Id.*)

There is no mystery that the ALJ's reasons for rejecting Dr. Perez's opinion included the fact that Dr. Perez's opinion was "not supported by the radiological findings of record" or the Plaintiff's own treatment records. (ECF 10-2 at 24.) As noted by the ALJ, Dr. Perez opined that

---

3   An information filed in this Court on June 4, 2012, charged Anita Dawson with the felony offense of aiding and abetting another person in the acquisition or obtaining controlled substances by misrepresentation, fraud, forgery, deception and subterfuge. *See United States v. Dawson*, No. 3:12-cr-00132, ECF 4. The information alleged that the offense occurred between July 2006 through May 2009. Following her guilty plea, Dr. Dawson was sentenced on January 7, 2013, to twenty-four months' imprisonment.

11

Plaintiff was not able to work at her customary occupation because of "constant right ankle pain & anxiety & depression[.] [U]nable to remember anything & worrying alot." (ECF 10-11 at 45-46.)

With respect to Dr. Perez's opinion that Plaintiff's ankle pain rendered her unable to perform full-time work, the ALJ properly rejected that opinion. In *Craig v. Chater,* 76 F.3d at 594-95, the Fourth Circuit, citing 20 C.F.R. §§ 416.929(a) and 404.1529(a), outlined a two-step process for determining whether a person is disabled by pain or other symptoms: First, there must be objective medical evidence showing the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The regulations require a threshold showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant. *Id.* (citations omitted). Second, (and only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed), the intensity and persistence of a claimant's pain and the extent to which it affects his or her ability to work must be evaluated. *Id.* (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)). This analysis must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. *Id.* (citing 20 C.F.R. §§ 416.929(c) and 404.1529(c)(2)&(3)). Once a medically determinable impairment which could reasonably be

12

expected to produce the pain alleged by the claimant is shown by objective evidence, the claimant's allegations as to the severity and persistence of her pain may not be dismissed merely because objective evidence of the pain itself (as opposed to the existence of an impairment that could produce the pain alleged), such as inflamed tissues or spasming muscles, are not present to corroborate the existence of pain. Objective medical and other evidence are, however, crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. *Id.* at 595. "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Id.*

Consistent with *Craig v. Chater*, the ALJ made the threshold determination that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (ECF 10-2 at 21.) The ALJ, however, also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not credible to the extent that they conflicted with the ALJ's RFC assessment. (*Id.*) In making this finding, the ALJ recognized Plaintiff's 2006 car accident and the injury to her ankles. (*Id.*) The ALJ further determined that Plaintiff had "virtually no treatment after her motor vehicle accident and recovery until right after she filed her claim for disability in April of 2010." (*Id.*) The ALJ also noted that in the year following her accident, 2007, Plaintiff worked and her earnings were "at the level of substantial gainful activity." (*Id.*) The ALJ further noted that "there is absolutely no evidence to suggest an aggravation of her ankle injuries that would prevent her from continuing to work." *Id.*

13

Dr. Perez's opinion is also inconsistent with the other substantial evidence in the case record, particularly the very thorough and detailed reports prepared by Kathleen M. Monderewicz, M.D., Plaintiff's examining physician, and Amy Wirts, M.D., a state reviewing physician.[4] The ALJ summarized Dr. Monderewicz's and Dr. Wirts' objective findings and reasonably concluded that Plaintiff's subjective complaints of pain were inconsistent with these physicians' opinions. (*Id.*) In contrast, nothing in Dr. Perez's three-page form opinion report or his limited treatment records provides "a longitudinal picture" of Plaintiff's impairments. Nowhere in his opinion report does he offer any meaningful analysis of any "medical signs and laboratory findings" to support his conclusions. The ALJ also noted that, although there was evidence that Dr. Perez prescribed Plaintiff Xanax at the time she filed for disability benefits in April 2010, Plaintiff did not seek treatment from a mental health professional until 2011. (ECF 10-2 at 22.)

Also, the nature and extent of Plaintiff's treatment relationship with Dr. Perez was a valid concern to the ALJ. Based on the medical records, it appears Plaintiff became a patient of Dr. Perez in early May 2010, just two-and-a-half weeks after she filed her disability claims. This factor correlates directly to several of the items specified in the regulations, namely, the "length of the treatment relationship and frequency of examinations" and "nature and extent of the treatment relationship," [20 C.F.R. §§ 404.1527(d)(2)(i) &(ii) & 416.927(d)(2)(i)& (ii)] and the "treatment

---

[4] Plaintiff claims the ALJ's RFC finding regarding Plaintiff's right arm, hand, and finger manipulability is erroneous because Dr. Wirts noted some limitation in this area. The ALJ's found that Plaintiff may "frequently reach in all direction[s] with the dominant right upper extremity, and engage in gross and fine manipulation with the same." (ECF 10-2 at 19.) Dr. Wirts' assessment that Plaintiff had an "occasional limitation" in her right shoulder and right hand "in reaching in all directions including overhead and in gross and fine manipulation" is not necessarily inconsistent with the ALJ's finding. Moreover, other medical evidence supports the ALJ's finding. Dr. Monderewicz observed that Plaintiff was able to write with her dominant hand, was able to pick up coins with either hand without difficulty, her range of motion of her right hand, wrist, and elbow remained normal, although Dr. Monderewicz examination indicated Plaintiff had some range of motion limitation in her right shoulder. (ECF 10-10 at 24-27.)

14

relationship" and "supportability" factors set forth in 20 C.F.R. §§ 404.1527(d)(2) & (3) and 416.927(d)(2) & (3).

The ALJ's decision to assign "little weight" to the opinion of Plaintiff's treating psychiatrist, Ted Thornton, M.D., was also a well-founded decision.  As noted by the ALJ, Plaintiff began seeing Dr. Thornton in February 2011 for depression, anxiety, and post-traumatic stress disorder.  (ECF 10-2 at 15.)   The ALJ, however, properly found that the objective evidence did not support Plaintiff's "extreme mental complaints and limitations."  (ECF 10-2 at 22.)   The ALJ expressed skepticism of Dr. Thornton's diagnosis of post-traumatic stress because the diagnosis appeared to be solely based on Plaintiff's subjective complaints and not on any objective findings.  (*Id.*)  The ALJ further noted that the psychological evidence showed that Plaintiff's mood was non-depressed; she had normal and coherent thought processes; there was no evidence of delusions, obsessive thoughts, or compulsive behaviors; her insight was fair and her judgment and memory were within normal limits; her concentration was only mildly deficient; she was capable of handling any benefits she might receive; her prognosis was fair; and her reported daily activities (e.g., making beds, washing dishes by hand, watching television, shopping, swimming and laying by a pool) were inconsistent with Plaintiff's allegations regarding the severity of her symptoms. (*Id.*)   Based on this record, the ALJ did not improperly discount Dr. Thornton's opinion.

### *B. Plaintiff's Second Objection*

Plaintiff also objects that the ALJ should not have found that Plaintiff was able to perform her prior work as an automobile insurance agent because Dr. Monderewicz opined that Plaintiff should avoid maintaining her legs in "a prolonged dependent position" such as sitting, standing,

and driving. (*See* ECF 10-10 at 26.) This contention is meritless. At the administrative hearing, the ALJ posed a series of hypothetical questions to a vocational expert that closely tracked Dr. Monderewicz's and Wirts's statements of Plaintiff's physical limitations. The ALJ's hypotheticals, however, did not include Dr. Monderewicz's finding that Plaintiff should avoid prolonged sitting, standing, and driving. In response to the hypothetical questions, the vocational expert opined that Plaintiff was capable of performing her past work as an insurance agent. Thereafter, Plaintiff's attorney followed-up with the expert and inquired if the expert believed work as an insurance agent could be performed if the individual needed to elevate her leg up to fours a day. The expert testified:

> If an individual needs to elevate the leg - - if it's the leg, no. If it's to elevate the foot and the individual is working a sedentary job with the ability to make position change every 15 to 30 minutes, it would be my opinion that such individual could probably do sedentary work. But it depends how the leg is elevated - - whether it's the leg which would cause more limitations that just the foot.

(ECF 10-2 at 72.) Then, in the middle of the expert's examination the following exchange occurred between Plaintiff and her counsel:

> Counsel: What do you elevate your leg on, Sheila?
>
> Plaintiff: Well, when I'm home I mean it's the bed. I mean that's the most comfortable or, you know, the couch. Like when I'm here I mean whatever I have, you know. But when I'm lying down it's - - you know, it's what I do. Is lie down. I have my leg up.
>
> . . .
>
> Counsel: Do you elevate the whole leg?
>
> Plaintiff: My whole leg.

16

(ECF 10-2 at 72.) Thereafter, the vocational expert opined that a person who has to elevate the leg could not carry out Plaintiff's past work activities. (*Id.*)

To the extent that Plaintiff asserts that the ALJ erred by not including in his hypotheticals Dr. Monderewicz's conclusion regarding prolonged sitting, standing, and driving, any such assumed error was harmless in light of Plaintiff's follow-up questions on the point to the vocational expert. To the extent that Plaintiff asserts that the ALJ "simply failed to address" Plaintiff's need to elevate her leg is simply not accurate. The ALJ's residual functional capacity determination took into consideration all of Plaintiff's many assertions concerning her physical and other limitations and specifically noted Plaintiff's testimony that she elevates her foot at least four hours a day. (ECF 10-2 at 20.) Following that summary of Plaintiff's allegations, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 21.) It was well within the province of the ALJ to assess Plaintiff's credibility and to accept or reject all or part of her testimony to the extent her testimony was inconsistent with other evidence. Moreover, Dr. Monderewicz did not opine that Plaintiff had to lie down on a bed for four hours a day. That was Plaintiff's testimony, which the ALJ could fairly reject as hyperbolic. Rather, Dr. Monderewicz opined that Plaintiff should avoid "maintaining the legs in a prolonged dependent position with sitting, standing, and driving due to swelling of the ankle joints." (ECF 10-10 at 26.) The ALJ took this finding into consideration when making his RFC assessment which provided that Plaintiff "must be allowed to sit or stand at 15 to 30 minute intervals, provided she is not off task more than 10 percent of the work period." (ECF 10-2 at 19.) Additionally, the vocational expert testified that a person "working a sedentary

17

job with the ability to make position change every 15 to 30 minutes" and who was able to elevate his foot was "probably capable" of performing such work. (ECF 10-2 at 71.) While the RFC assessment might also have noted that Plaintiff should be permitted to elevate her foot while she was seated, that omission does not require remand based on the ALJ's concerns with Plaintiff's exaggeration of the extent of her physical limitations and the lack of medical evidence that Plaintiff actually needed to elevate her leg for four full hours during the work day. Based on this record, the Court will not disturb the ALJ's conclusions.

### *C. Plaintiff's Third Objection*

Plaintiff's third objection is that the ALJ erred because his reasons for finding Plaintiff not credible are "not true, irrelevant or legally inappropriate." (ECF 20 at 10.) Plaintiff's argument consists of three sentences and a footnote. Rather than enlighten the Court of the grounds for her argument, Plaintiff contends the Magistrate Judge failed to address "any of Ms. Fouch's arguments on this point, except one." (*Id.*) She then invites the Court to read her "previous briefs." (*Id.*)

The Court declines Plaintiff's invitation for two reasons. First, this Court need not conduct a de novo review when a party makes general and conclusory objections. Plaintiff's objections are both general and conclusory. Second, in reviewing the record for substantial evidence, it is elemental that the Court should not undertake to make credibility determinations. The Court is also mindful that the " 'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.' " *Labor v. Mut. Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). As noted *supra, t*he ALJ listed his reasons why he

believed Plaintiff's statements were inconsistent with objective medical evidence. Plaintiff offers the Court no specific reason to disturb these reasoned findings.

*V. CONCLUSION*

For the foregoing reasons, the Court **FINDS** that the ALJ's decision is supported by substantial evidence and was made through application of correct legal standards. Accordingly, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&R, **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this matter from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 25, 2013

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE